Case number 418-0005. And I would like the parties to step up, counsel, who will be arguing, and state your name and identify what party you represent. Good morning, Your Honor. Peter Breen on behalf of the plaintiffs. Thank you. Good morning, Your Honors. Brett Lagner on behalf of the defendants, please. Thank you. And Mr. Breen, you might as well remain. Are you ready to get started? Yes, Your Honor. Thank you. Thank you. You may proceed. Good morning, Your Honors, and may it please the Court. Your Honors, again, I am Peter Breen. I represent the plaintiffs in this case, which are organizations representing their members and several Illinois legislators, 12 of them. The plaintiffs stand before the Court today representing hundreds of thousands of Illinois taxpayers. We have a simple plea. Enforce two taxpayer-protected provisions of the Illinois Constitution, as written, our balanced budget requirement and our effective date of laws section. Plaintiffs' positions on these provisions respect the proper constitutional prerogatives of the courts, the authority of the General Assembly, while also protecting the taxpayers. Defendants' position, however, entirely twists the separation of powers. They would, on the one hand, invade the power of Illinois courts to interpret and enforce the Constitution, and then, on the other hand, intrude upon the rights of the General Assembly to set its own internal parliamentary rules. Just to recap on the balanced budget. In recent years, the General Assembly majority has flouted the balanced budget requirement. The majority has refused to estimate a revenue ceiling and appropriate within that estimate. There is nothing in the history and structure of our balanced budget requirement that indicates the courts should turn a blind eye to these flagrant violations of law. The balanced budget requirement is written in words as clear and concise as the English language affords. But if this Court won't act, the law is essentially a dead letter. We all know the issues with the State of Illinois with its bankruptcy, and you toss any sort of fiscal sanity in the trash. And so we would respectfully contend the defendants have twisted the meaning of the framers and of the people enacting the balanced budget requirement as part of the 1970 Constitution. Constitutional Convention debates make clear the legislature has plenary authority to set the amount of the ceiling. But there is no indication that the framers agreed or understood that there would be no enforcement at all of the requirement that a ceiling must be set and that the appropriations cannot go above that ceiling. In fact, we would respectfully contend the constitutional debates indicate otherwise. But those were requirements. There's a shall in that provision. There was no option there. And the people of this State, when they were mailed at their homes the little packet explaining the Constitution, they were sold a balanced budget requirement. But the defendants' arguments, if carried through, would essentially strip that protection from them. Mr. Breen, if you would be so kind to share with us the specific provision of the Constitution to which you are referring that you believe was violated. And, Your Honor, it is Article 8, Section 2, Subsection B, and it's the second sentence. The appropriations for a fiscal year shall not exceed funds available, I'm sorry, shall not exceed funds estimated by the General Assembly to be available during that year. And then that brings us to your argument that there was no estimate done, correct? Yes, Your Honor. Yes, and that's when you both, you know, it's the Constitution, so the terms are concise, and there's not a lengthy list of how exactly the General Assembly would appropriate, would make an estimate. In your brief, you talk about that there was no joint resolution determining, you know, the amount. But where in the constitutional provision is there a requirement that there be a joint resolution? I'm not talking about COGFA, I'm talking about within the Constitution. Sure. And, Your Honor, the Constitution makes clear the General Assembly must adopt the estimate, however it decides to do so. In this particular case, the General Assembly acts either by passing a bill or passing a resolution. When the General Assembly wants to act without the governor, they adopt a joint resolution between the two houses. So that's just the process that is the standard process of the General Assembly. COGFA Act, though, gives a nice, clear statement. Hey, here's how we meet this requirement under the law. The Illinois Supreme Court and other courts in this state have had occasion to address a question often as to whether a statutory provision is mandatory or directory. And one of the statements that the Supreme Court has made in totally other context, but seems applicable here, is determining whether a statutory provision is mandatory or directory. You have to look to the language used by the legislature, in this case the Constitution. And the Court has written that when the statute expressly prescribes a consequence for failure to obey a statutory provision, that is very strong evidence the legislature, or in this case the Constitution, intended that consequence to be mandatory, or make that provision mandatory. There is no consequence here, is there? Well, Your Honor, I know in the briefing we had a little bit of a dispute over our terminology, the mandatory, directory, permissive, obligatory, that. We would respectfully contend that in terms of the grant of power to the General Assembly, that comes from the Constitution. It is a shall language. In fact, the first sentence of Section, you know, Article 8, Section 2B is that the appropriations will come, and I'm not quoting it directly, the appropriations come from the General Assembly. The second section is the limitation on that power. So I respectfully contend it would not be appropriate to have within the State Constitution the actual consequence. To make my question clear, it would be this. If the General Assembly fails to do what you're maintaining the Constitution requires it to do, then what? What does the Constitution say happens then? Well, it has acted outside of its authority. So it's then subsequent action. That's not my question. What does the Constitution say happens then if the General Assembly does not live up to this constitutional requirement? We would contend the Constitution says that the appropriation put forward by the General Assembly is not valid. Where does it say that? Well, Your Honor, I'd say the Constitution itself doesn't necessarily have to include a specific penalty. That goes back to my point. The Illinois Supreme Court has addressed this, and other courts in the State have addressed this repeatedly, and the statutory consequence or statutory construction has said this particular statute says certain things must happen, shall happen, and says, and if they don't, here's what will follow. And the Supreme Court has said, therefore, this isn't just hortatory language. This is not may. This is shall and consequences are following. This is before this issue arose. And when we have a situation here and no consequence, such as one of them could have been, if the framers of the 1970 Constitution thought it appropriate is, and if the General Assembly fails to submit a balanced budget, it's a justiciable matter, and the courts may declare the budget that was passed void, which is, in effect, what you're asking us to do, is it not? Well, and yet we are asking that the appropriation that we're stating, the appropriation absence of available revenue estimated, is not a valid appropriation. And so, but, Your Honors, as I understand your line of questioning. The entire appropriation, the appropriation you're talking about, you can't just parse out the one section for House Bill 40. The entire appropriation, the entire $34.39 billion appropriations that the state has been operating under since January is invalid. Right. We've been operating since July 1st, even. And this was one point we would, again, if we're going to the policy matter of how to deal with this, there have been no other lawsuits that we know of where folks have challenged the other sections or any of the other appropriations, any of the other purposes within the appropriation. Let me go back to my question. If it were 1970 and Delegate Green were part of the Constitutional Convention, and you thought this was such a critical provision, and it's an important one, couldn't you or couldn't the Constitutional Convention have put in an enforcement provision to the effect that, and by the way, if the legislature doesn't do this, that it's a justiciable matter, that it may be brought to the court and the courts may declare the budget void? Your Honor, were I thinking of this in 1970 and knew that we'd be arguing in 2018 about it? Certainly, but when you look at it. Well, we are a little bit perhaps surprised by the irresponsibility of the General Assembly in getting budgets passed. Maybe they didn't foresee that. On the other hand, maybe they should have. Well, but again, the way the floor debate was, as I read those debates, you can appropriate up to the ceiling. And so it is a limit on the legislature's power. You know, for the first sentence of that same subsection, there's no enforcement mechanism, but the courts have struck down when there's been spending without appropriation. Let me ask this also, counsel. I assume that this is a matter which is here, was first litigated in the trial court. And I suppose, you know, I'm a big fan of the judiciary, but are we really capable as an institution of hearing and determining this $39 billion budget plus? Is that estimated revenue really appropriate and valid, consistent with the constitutional mandate? Well, some trial judge initially is supposed to determine this, and then the three of us are supposed to review that and make that assessment? Well, and, Your Honors, I would say that between the parties, there's no dispute that this is a duty of the General Assembly, so that the defendants here have not disputed that there is a duty to follow a sexual constitution. No, no, it's not a question of duty. But your position is, yeah, they have this duty, and they fail to live up to it, because the revenues, and perhaps the Attorney General representing the General Assembly can say, oh, no, you know, this claim that these revenue estimates are bogus, it's not true. They're going to continue to sell the State of Illinois building for $300 million each year, and that's how we're balancing the budget. That's just one example. So are the courts supposed to be examining this $39 billion budget to determine whether it's consistent with the constitutional mandate? If I may, Justice, we are getting past the question of whether we are even – we don't have a revenue estimate at all. So there's not even – we've been foreclosed. This entire area of inquiry is being stripped from you. So you can't even begin to develop case law here or even look at the issue to say, well, could we? Because I would respectfully contend that the legislature sets a number. You can look at how much goes into the number, see if it's under the number or over the number. We could do that? You could. However, today all we're saying is do you even have an ability to wade into what at least presented to the people, the convention delegates thought was a duty, a limitation, really the sole limitation on the General Assembly's appropriations power, whether that is essentially – whether it's going to be a hortatory language. Now, again, the trial court's decision was that this is a political question that can't – we have no jurisdiction to even consider it, not even to go to the next step of saying hortatory. Well, but to say it's a political question, one of the ideas that underlies the political question doctrine is the – not inability, perhaps, but the notion that the courts really aren't equipped to address and handle these kinds of issues. Now, I was a trial judge for a long time. I don't think I was ready to examine the $39 billion budget to determine is this, in fact, legitimate based upon revenues. Well, but, again, we're not – Mr. Green, if I could interrupt. My understanding of what your argument is, not that we examine the entire budget, but that we answer the question as to whether or not the legislature entered into a joint resolution estimating the revenues. And the legislature adopted any sort of estimate. We are contending that. We would respectfully contend the record shows no attempt at all. And the trial court, I know the defendants had even surmised that a few legislators could get together and have a cup of coffee. It's not the General Assembly acting. We act in a – the General Assembly acts in a public voting manner and with a roll call vote at the request of the members. So we know the Senate passed a joint resolution, right? And I believe the briefs indicated that the House had maybe three different estimates in front of them. None of them actually voted on, but they had that information. None of them were allowed out of rules by the majority. But what I'm trying to get to is there seems to be a distinction between the language in the Constitution versus the language in CAFA. And, Your Honor, I would respectfully contend that's a distinction without a difference, because that merely is the way the General Assembly acts when it is acting between the two houses to pass a resolution. So it's either a resolution or a bill. So if there was some other way that the General Assembly decided to come up with within its rules and authority to essentially enact a joint resolution without calling it something different, so be it. But that's just how – that's the mechanism available. Okay. So I don't understand why we shouldn't consider the fact that the Constitution does not speak to a joint resolution. Well, and again, the General Assembly with the Governor, an act of law, showing the clear judicial standard that you could apply. But otherwise, again, there's no – Your Honor, if the General Assembly wanted to come up with another mechanism and use it, then certainly there would be an argument there. But it's very clear on this record there was no attempt at all to submit an estimate of revenues. At all. There's nothing in the record that shows that. Well, I contrast that to the language in COGFA that says the House and Senate, by joint resolution, shall adopt or modify such estimates as may be appropriate. So as I read the plain language of COGFA, which I think is your strongest argument, it's very clear that there is the expectation that there would be the joint resolution. Certainly the expectation of law in accord with the Constitution, the law of references, says this is how we conform with the duty imposed on us in the Constitution. This is the COGFA Act. The General Assembly has created an entity that does the estimates, and then you either adopt it or modify it. So that is all very clearly laid out so that this Court, in terms of a political question, could very quickly look and go, was there a joint resolution or was there not? If the defendants want to argue that they used some other method or mechanism, then that could be an issue. But just at base level, you'd look and go, is there a joint resolution? No. Well, there was no revenue estimate. And I know the defendants made a big point about legislators who happen to be plaintiffs, among the large number of plaintiffs we have, and they all voted against HB40. Well, there are also legislators telling you there was no revenue estimate. But then, of course, that gets us to Justice Steigman's inquiry under COGFA, whether or not that was mandatory or permissive. Again, Your Honor, when you look at the Constitutional Convention, it is the lone, effective, it's a small imposition on the legislature. We used to have much more specific appropriations limitations in the 1870 Constitution. It's a very limited limitation, but it's the only limitation in there. There's no indication that it was supposed to be a hortatory idea, that somehow the General Assembly was not supposed to comply with it. In our opening brief, pages 25 to 27, we had given the Court numerous examples from other states that had enforced budget restrictions from their state constitutions, and even in some of the cases simultaneously evidencing the respect of the judiciary for the role of the General Assembly, their right to make the appropriations, and not wading into their policy judgments, but saying, look, you've spent more than you have. And so it's a very, in most cases, it's a simple analysis. And if it's a bit more complex, well, then those issues could be litigated down the road. I mean, this Court is dealing with very complicated matters all the time. Would you say that there is a conflict between the Constitution and CAWGFA? No, absolutely not. No, CAWGFA merely embodies what the Constitution commands. It really puts the, again, it's more of a – Is it more specificity? Well, it certainly gives you the method, but I would, I think what you would see is the General Assembly either acts by bill or by resolution. This would be a resolution, not a bill, just by nature, by the nature of the rules of the House and Senate. Would Your Honor's like me to proceed to the effective date of laws? I have one more question. Justice DeArmond mentioned, does this require us, if we follow what you're asking, to basically torch the entire budget? And that brings me to the fifth factor in Baker where it indicates that where there is an unusual need for unquestioning adherence to a political decision already made, are we at that point with this matter? And, Your Honors, I would say the argument would have to then, every single year, the appropriation would have to be said to be an unusual need for an unquestioning adherence to the appropriation. If this Court doesn't declare the law at some point, every single year's appropriation is going to be a five-alarm fire and a hair-on-fire emergency. If this Court were to come in our favor on this case, should someone decide to challenge a part or all of the appropriation, at least enough of it, that the General Assembly cared about having that appropriation stricken? I'm assuming that they would call the General Assembly back in a special session, they would adopt a revenue estimate, and in the future, every year, there would be a revenue estimate. The budget process might work a bit better. At least it would work more in accordance with the Constitution framers dictated to us 28 years ago. Well, I must admit, while watching coverage regarding the current budget, I've been thinking a lot about this, so that's for sure. Yes, Your Honor. And just on the effective date of laws act, very quickly, the defense had no counter for two of our arguments that I think are pretty critical. One is that the primary purpose of that section is to force the General Assembly to complete its work by May 31st. It's a critical area that the defendants entirely just were silent on. They conceded it by their silence. And so that was very much explicit in the floor debate, in the amendment in 1994, and certainly in the original CONCON in 1970. And then as well, the point that if a bill is subject to a motion to reconsider Let me just read the sentence. If a bill is subject to a motion to reconsider, if that motion is never lifted, prior to the end of that General Assembly, the bill is dead. It doesn't get sent to the governor. It's not passed. It's dead. It never leaves its chamber. Thank you, counsel. You'll have time on rebuttal if you so desire. Good morning, Your Honors. May it please the court, counsel, Brett Lagner on behalf of the defendants. Your Honors, this court should affirm the Circuit Court's judgment because the General Assembly did not violate Article 8, Section 2B of the Illinois Constitution, and in any case, that issue presents a non-justiciable political question. In addition, the effective date of House Bill 40 was January 1, 2018. Before I turn to the merits, yes, Your Honor. Excuse me. Given my ever-decreasing attention span, this is kind of a complicated case. What I'd like you to do is address the remarks of Mr. Breen right at the very end of his argument where he talked about how you didn't contest or essentially conceded something, and I'm sure you heard that. And before I forget what he had said, it would be helpful to me if you would address that immediately with my apologies. No, absolutely, Your Honor. And counsel argued that the purpose of the constitutional requirement and then the subsequent statutory provision in the Effective Date of Laws Act was that the General Assembly should finish its business by May 31st. He also made a point that a motion to reconsider that was never lifted by the end of a General Assembly, in that case, the bill is dead. Neither of those points are relevant to the issue here, which is under Mulligan and under Olphin, Construing the Effective Date of Laws Act, when is a bill passed for determining its effective date? And under those cases, a bill is passed at the last date of legislative action. Not the date of the last act of the legislator, but the last date of legislative action, which is a specific term in this context. And what that means is that is the point at which the language in the bill is finalized. It doesn't change after that. And the purpose of that is because the purpose of this provision is to, and the purpose of having effective date of laws issues is twofold. One is to make sure that the General Assembly doesn't engage in year-round legislating. But two, and connected to that, is to make sure that the public has sufficient knowledge of the terms of a law to which it must conform its conduct before the law is effective. In this case, as of May 10, 2017, the language in House Bill 40 was finalized. At that point, it was passed by the second house, in this case the Illinois Senate, of the General Assembly on third reading. The language of that bill did not change after that point. So, counsel, you're arguing like in Alfin, where we had basically the override of a non-amendatory veto, where nothing changed, then that's the effective date of the law in terms of the act, and that's what we should look at. Versus Clinger, where there were changes in the language that had to be approved by the legislature before things could move forward. Absolutely right, Justice Holder-White. In Alfin, the override, the General Assembly overrode a non-amendatory veto. And so the last date that the legislator did anything was the day it overrode the veto. But for the purposes of that bill's effective date, because the language didn't change through that veto process, the effective date was the date that the second house of the General Assembly passed that bill on the third reading, which was well before that veto process. As opposed to Clinger or Mulligan, which involved changes to the language of the bill. And once the General Assembly approved those changes to the language, that date was the effective date, because at that point, that the public was on notice of the content of the bill and was aware of what its rights were or what conduct it must conform to. So is that your position as to why the petition to reconsider the bill doesn't matter for the purposes of this assessment? That's right, Your Honor. That's exactly right. Because the bill didn't change? The bill did not change. Is Mr. Green correct that had he not asked to reconsider, or had he not withdrawn the motion to reconsider, the bill would have died? Had it not been withdrawn, then the question would be whether it would be called and otherwise acted upon. If nothing happened. Which would require some sort of legislative action. Well, and again, Your Honor, there is a difference between legislative action and an act of the legislature. But the legislature, or some part of the body at least, would have had to have done something. That's true. Which would be legislative action. Again, legislative action for the purpose of determining the passage date of a bill, for the purpose of determining its effective date, is a very context-specific thing. Also, in Alfin, where the legislature overrode the governor's veto, the legislature did something, right? Yes, that's right. That's absolutely right. But they didn't change the content of the bill. Exactly. And so, when it overrode the veto, which was an act of the legislature, that did not affect the effective date of the bill. Let's go back to our facts. Yes. There was the motion to reconsider. That's right. What action could take place on the bill while that motion to reconsider remained? While that motion to reconsider remained, there was no action to take place on the bill under the Senate's rules. That bill stayed with the Senate. What happens if he didn't move to withdraw the motion to reconsider? If he didn't move to withdraw it, then the Senate would either call the motion or not. Would that be legislative action? That would be an act of the legislature, but not legislative action. I know this sounds like a horrible semantic trap, and I'm not trying to make it that way. So, I'm sure that there's a case that says exactly what you're saying. Legislative action means X, Y, Z. Mulligan. Okay. But in that case, that wasn't the situation we had here. That's true. There is no case that deals with the motion to reconsider issue. But there are cases. Often. They're all dealing with mandatory vetoes or efforts to veto. On the specific facts of those cases, but Mulligan describes other circumstances aside from dealing with a veto process that constitutes final legislative action. And they do so. And Mulligan comes up with that list based on its analysis of why do we have this provision in the first place? What is its purpose? And its purpose is to give the public notice of the content of bills. Here, the public was on notice of the content of HB40 as of May 10, 2017. It didn't change after that. And it would be inconsistent with the purpose of that constitutional and statutory requirement to hold that one senator can file a motion to reconsider and then subsequently withdraw it with no action by the legislative body. No action by the legislative body. And that would somehow constitute legislative action that would change the effective date of the bill. That, allowing that, that rule would allow for all sorts of gamesmanship and, you know, aim at dilatory purposes for manipulating the effective date of the bill. And that's not the purpose of these rules. Assume hypothetically that the senator never withdrew it and the Senate never called it in the legislature during Sunday day. Then what happens? Then the bill would never have been sent to the governor for his signature and it would not have become law. Going back to some of the other stuff, I apologize for interrupting your argument with this, but as I say, that was the last point Mr. Breen made and I was anxious to hear your thoughts. It seems fundamentally if we agree that the Constitution contains this requirement and if we agree with you and reject Mr. Breen's arguments, essentially the Constitution is rendered without effect, isn't it? That is, what's to keep the legislature from essentially disregarding the requirement that's supposed to pass a balanced budget? Millions of Illinois voters. This is exactly the type of provision where if the idea is that the General Assembly has not complied with it, the answer is the ballot box. The answer is to replace the General Assembly. And this is consistent. Hold them accountable politically. Absolutely. And so the answer is not COGFA, the law that the legislature passed. The answer is not COGFA, Your Honor. Has not followed. That is true. You are correct that the answer is not COGFA. And the answer is not COGFA for a couple of reasons. First, the Illinois Constitution does not require adoption of a joint resolution. And this is very important. The Illinois Constitution does not require a formal adoption of an estimate by the General Assembly. Does COGFA require that? The COGFA Act requires a joint resolution adopting an estimate. That's true. And we don't have that. We do not have that. That's right. We can't substitute the COGFA requirements for a constitutional requirement. So if there's a violation of the COGFA Act, that's separate than a violation of the Constitution. And I also want to draw the Court's attention to – Holding that thought, if there's a violation of the COGFA Act, we're convinced that there is. Does that render, as Mr. Breen is arguing, the budget void? No, absolutely not, Your Honor. And that's because that provision of the COGFA Act is directory rather than mandatory. In Illinois Supreme Court's jurisprudence, it's clear that in the mandatory directory determination, there's a couple steps. First, you look at the language of the statute to determine whether it's mandatory or permissive. If you determine it's mandatory, you use a shall, as this one does, then you look to determine whether it's mandatory or directory. When a statute requires a public official to do something, the presumption is that it's directory. That presumption can be overcome if the statute contains consequences to the failure – specifies consequences for the failure to comply with the statutory requirement, or if a directory reading would be inconsistent with the purpose of the statute. Here, the COGFA Act contains no negative consequences. It does not say that the General Assembly – for instance, the General Assembly's failure to adopt a joint resolution renders all appropriations void. Additionally, the purpose of the COGFA Act as a whole is to provide the General Assembly with information. It's an information gathering tool for the General Assembly. Section 4 of the COGFA Act specifically deals with reporting requirements of COGFA to the General Assembly. It would be difficult to believe that within the context of Section 4 of the COGFA Act, the General Assembly would create a mandatory requirement on itself that would result in the invalidation of appropriations bills. As a theoretical matter, the legislature could have done that. That is, this isn't just a matter of resolution. We're talking about passing a law governing the legislative process. Could the legislature have passed a law saying essentially what they've done in COGFA and saying, and if there is no joint resolution submitted, then any subsequent budgets are void? Absolutely, the General Assembly could have specified the consequences to the failure to adopt a joint resolution to make it a mandatory provision. And it's the absence of that that you believe renders this essentially a hortatory language? Directory language, yes, Your Honor. Absolutely. Because, and again, it's the presumption, and Illinois law is clear on this, that the presumption is that it's directory, not mandatory language. And there's no language in the COGFA Act, no language in Section 4 to overcome that presumption. Because there's no statement of consequence. Correct, Your Honor. That's absolutely right. And the O'Brien v. White case and People v. Robinson are two Illinois Supreme Court cases that we cite and discuss in our brief that go directly to that point. I also wanted to draw your attention, Your Honor, to Section 2A of Article 8. So we've been discussing Section 2B of Article 8. Section 2A of Article 8 is a provision that requires the governor to prepare a proposed budget and deliver it to the General Assembly. That provision contains very detailed requirements as to what the governor must do, including the requirement that the budget shall set forth the estimated balance of funds available. So in Section 2A, the constitutional framers explicitly stated that the governor must provide a formal estimation of funds and the form in which to do it, the budget, the proposed budget. All of that language is absent in Section 2B because the constitutional framers intended to give the General Assembly essentially complete discretion on how to estimate funds, how to estimate what revenues are available and to appropriate within it. Counsel, is it your position that there is a conflict between the Constitution, and I'm talking about 2A, I mean, sorry, 2B, and COGFA? There is no, it is our position that there is not a conflict because COGFA is a directory statute. But insofar as the statutes were mandatory and purported to limit subsequent General Assembly's constitutional discretion, that would be a different issue, and that would be problematic, Your Honor, absolutely. I wanted to jump to the side real quick to address something that I intended to talk about at the top, which was this impending mootness, the impending mootness of this case. Plaintiffs in their amended complaint frame this action based on two claims. One is that FY18 appropriations were not adequately estimated. And to be sure, their claim concerns the entirety of FY18 appropriations. And so if they are correct, then the entirety of those appropriations are invalid, and essentially government needs to stop them. But the FY18 is almost over. And on June 4th, the governor signed into law Public Act 100-538, which is the omnibus appropriations bill that's effective July 1, so in a couple weeks. In that bill, Article 13 appropriates approximately $50 million to the Department of Health Care and Family Services to cover services provided under, among other things, the Public Aid Code, which would be services provided under House Bill 40. Article 998 of Public Act 100-538 provides that the money appropriated in that article shall be used for expenses incurred prior to July 1 of this year. So insofar as there's a concern about insufficient appropriations for services covered by House Bill 40 between January 1 and the end of this fiscal year, the new omnibus appropriations bill provides money for that. Additionally, with regard to the effective date of loss point, their claim was that this bill does not become effective until June 1. Well, June 1 has passed. All the services under House Bill 40 that were going to be rendered between January 1 and June 1 have been rendered. It is true, as this is a taxpayer action, to enjoin the disbursement of public funds. It may not be in that regard technically moved until all the funds have been disbursed, and there's a lag. The evidence in the record is that there's a couple-month lag between the rendering of services and payment for that. But the point is this. The point is this. Any kind of injunctive relief would be inappropriate. It would be inequitable because all the services have now been rendered. To enter an injunction now would be to tell either the service providers who provided those services or the recipients of those services, you're now on the hook for payment because the Medicaid provisions of House Bill 40 aren't going to apply. And so in the nature of equity, that would be inappropriate for injunctive relief at that point. Well, I'm not sure I understand it, so let me ask this question. Is it your position that the newly passed budget bill has a specific provision that talks about paying all bills provided under HB 40? It doesn't mention HB 40 specifically, but it provides for payment of bills covered under a number of enumerated statutes, including the public aid code, and the HB 40 services are provided under the public aid code. So, yes. So there's a specific retrospective provision? Yes. Article 998 makes that retrospective. And additionally, Article 91 has about $7 billion in general funds appropriations to the department for services, including services under the public aid code. And under the Illinois State Finance Act, that money can be used to pay for services that incurred in a prior fiscal year. But is any of this off record in this matter? Not yet, Your Honor. Once this becomes effective on July 1st, I will make a motion and grant the record. But since we're here together, I wanted to highlight it to your attention. Are you asking us to take judicial notice of bills passed by the legislature? Yes, Your Honor. Can we do that? Absolutely. And a couple of final points about the justiciability. Actually, I guess it's not a bill passed. We're now talking about a public act. It is a public act. It's an enacted law, Your Honor, and, yes, you can take judicial notice of that, absolutely. A couple of final points on the estimation of funds. Again, I want to stress that the Constitution does not require the General Assembly to formally adopt any estimate. The Constitutional Convention framers explained that they intended the amount of money to be appropriated for the payment of services in Illinois to be the product of a political back and forth. There's quotes in our brief from Delegate Netsch and Delegate Johnson. During those debates, that explained that the governor will propose some number. The General Assembly will work with numbers. And the final number that will be at which everybody will arrive at will be the result of the political process, the result of a sectional or special interest. That type of political process to arrive at the appropriations number is specifically allocated by the Constitution to those branches of government. Counsel, you're out of time, but I will allow you to finish that thought if you had something else to add. Thank you very much, Your Honor. I just was going to, in fact, end with that thought and ask that you please affirm this Circuit Court judgment. Thank you very much. And, Your Honors, I just want to, we've got a couple of points here and a number, and including some new arguments that are unsupported in the record, as the Court noted, because there was a lot that went on with the passage of that particular bill, including floor debate that referenced this litigation as justification for the General Assembly not enacting a revenue estimate. So we can litigate that out if the need arises or if counsel wants to file this motion. I respectfully contend. But at least for what's in the record, on the effective date issue, counsel has really been unable to answer our arguments that we made, but also we had made another argument that there was an insufficient answer to. Section 9, under Article 4, Section 9, the Presentment Clause, requires every bill to be presented to the governor within 30 days of passage. However, a motion to reconsider, because it's holding the bill in the chamber and it hasn't yet passed, well, you don't present the bill to the governor when the bill hasn't passed. And they're putting upon this Court an inconsistent reading of the word passage between Section 9 and Section 10, which were enacted together by the Constitutional Convention. They're immediately adjacent sections. There's no reason to read them out of kilter with one another. As well, I would just note, in terms of his, you listen to the defendant's arguments about, well, that would be legislative gamesmanship. And there would be all sorts of items that he's talking about. Well, what do I think about this particular legislator or that one? I would respectfully contend that is invading the province of the legislature. That would be a blatant violation of separation of powers to go into and say, well, why was the Senate president pro tem, Mr. Harmon, why was he filing this motion to reconsider? We don't, respectfully, the courts don't have the ability to invade that. I think the Senate rules make it clear. There's Senate Rule 715, which holds a bill in the chamber until the motion to reconsider is lifted. And Your Honors had the point that if the motion is never lifted, the bill never becomes law. There's no effective date. And as well, going back to counsel's note about millions of Illinois voters can replace the General Assembly. With all due deference, as we've seen, there are five members of the House Rules Committee, three majority, two minority. Most of the people in Illinois don't elect those members. Most of the people in Illinois don't elect the vast majority of the members of the General Assembly. There was a gerrymandering case for the Supreme Court on that topic. But counsel's argument about somehow the people of Illinois can take control of this is really, it's not accurate. Just generally, and as well, why have a constitution at all? Why not go to just bare majority rule? Why not go to a parliamentary system? That's not our system. As well, I would... Counsel, I keep going back to my thoughts as well as what counsel said, that there is a difference between the constitutional requirement and COGFA. COGFA merely puts, it merely provides a vehicle to enforce the constitutional provision. I mean, there is nothing about it that is extraordinary. And there's no reason to write into the Constitution all of these various spots. And counsel's argument, somehow there's a presumption that every single constitutional provision is directory. Every constitutional provision is directory, even with a shall, even with floor debate from the CONCON showing that there was a belief it was a requirement. That's unsupported by his cases, unsupporting his record. The mandatory directory idea was really more, it's directed more usually at procedural requirements, whether the lack of doing a procedural requirement causes something to be illegal or what have you. And so that's not, I don't know of any case where it's been applied directly to the Constitution and to provisions that say shall and when in the constitutional debates the framers said, yes, the General Assembly has authority to set the number, but they do not, there's a requirement that they appropriate the number and stay within it. And, Your Honors, I can address some of the impending mootness concerns, but one of the basic points is our complaint persists because there's still no revenue estimate. For any of these fiscal years, as well, there is a long lag time, as I understand it, of delay that is allowed to medical providers in terms of submitting Medicaid claims. So even when July 1st passes, there are still many, many claims that will be, that will have a very long lead time, and then, of course, there's the delay in the comptroller's office. So the case doesn't go moot, whether for our count one or our count two. And, of course, there are all sorts of exceptions to mootness that we could argue, whether public interest or recurring issues, if this case were allowed to continue. Again, I also want to say, work wasn't finished. So going back to the effective date, work was not finished on HB40 by May 31st. It was not finished. What language changed? It doesn't matter about language changes. Well, Alfin and Mulligan, I mean, they seem to suggest that it does. Your Honor, those bills passed. They were passed by the legislature. They were coming back from the governor. They are in an entirely different framework at that point. To come into the legislature and say, this bill has now passed, and either we're going to force you to disgorge its Senate to the governor within 30 days, even though no legislator would consider it passed, and it would be an invasion and a violation of the Senate rules to call it that, it truly would be a grave imposition on the prerogative of the legislature to set its rules, to hold that bills that have not passed have somehow passed. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.